IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04CV38-02-V
(3:99CR24-14-V)

| | | |
|---|---|---|
| **JOHN BARRY McLENDON,** | ) | |
|     Petitioner, | ) | |
| | ) | |
|     v. | ) | **O R D E R** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
|     Respondent. | ) | |

**THIS MATTER** is before this Court upon petitioner's "Motion To Vacate, Set Aside, Or Correct Sentence" under 28 U.S.C. §2255, filed February 2, 2004; and on the "Government's Motion For Summary Judgment And Answer . . . ," filed March 15, 2004. For the reasons stated herein, the government's Motion for Summary Judgment will be <u>granted</u>; and the petitioner's Motion to Vacate will be <u>denied</u> and <u>dismissed</u>.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Pertinent to this Motion, the record reflects that on March 1, 1999, the petitioner (along with thirteen other individuals) was named in a multiple-count Bill of Indictment. The sole charge against the petitioner was that he had conspired to possess with intent to distribute quantities of cocaine powder and cocaine base within 1,000 feet of certain protected areas, all in violation of 21 U.S.C. §§841(a)(1), 846 and 860 (Count One).

After ten of his co-defendants entered into plea agreements

with the government, the petitioner and his three remaining co-defendants proceeded to trial on the subject charges.  On October 18, 1999, the petitioner and his co-defendants selected their jury, and their trial got underway on the following day.

During its case in chief, eight of the ten witnesses presented by the government identified the petitioner as a member of the subject conspiracy.  More particularly, Fulton Tillman, Charles Robinson, Ricky Smith and Melvin Burns--all of whom were named as the petitioner's co-conspirators, testified to his involvement as a "runner" for conspiracy members such as Tillman and Donnell and Ricky Lindsey.  Witnesses Theodore Carr, Terrence McRae, Gary Bennett and Jeffrey Wall each further testified to the peti-tioner's involvement as a "runner" for the Lindsey brothers.  Carr also testified that the petitioner had been a runner for him as well.

The witnesses defined "runner" as a person who typically retrieved drugs from hiding places for superiors to sell to other high-level dealers, and/or a person who actually conducted the smaller, hand-to-hand drug transactions with drug consumers.  Indeed, such witnesses also testified that they had observed the petitioner engaging in numerous hand-to-hand drug transactions.  In addition, some witnesses testified that they had observed the petitioner bring drug customers to the Lindsey brothers, and to others; and some of the witnesses testified that they observed the petitioner being compensated for his efforts with cash and/or

2

with drugs. Witnesses Carr and McRae also testified that the petitioner had conducted medium-level drug deals with them on behalf of the Lindseys.

In his defense, the petitioner presented testimony from his mother, who stated that she was aware that her son used drugs. However, contrary to the petitioner's belated representations, his mother testified that she was not aware that the petitioner had a serious problem with drugs. Thus, the petitioner's mother's testimony did not fully support his assertions that he had a severe drug problem; and that he only maintained contact with conspiracy members for the purpose of feeding his own serious drug habit.

In addition to the foregoing, the petitioner testified in his own behalf. During his testimony, the petitioner admitted to having possessed and used drugs on a regular basis during the life span of the conspiracy. However, the petitioner denied having ever sold any drugs or, more particularly, having been a "runner" for conspiracy members.

In any event, after the Court denied the petitioner and his co-defendants' motions to dismiss, the jury deliberated on the pending charges. At the conclusion of their deliberations, the jury convicted the petitioner and his co-defendants on all charges.

Next, on May 1, 2000, the petitioner's attorney filed a document captioned as "Defendant McLendon's Objections As To Pre-

sentence Report . . . ." Such document acknowledged the testimony against the petitioner from the eight above-identified witnesses. However, counsel objected to, inter alia, the Report's recommendation that the petitioner be sentenced based upon involvement with "in excess of 1.5 kilograms" of crack cocaine. Rather, counsel argued that the testimony established the petitioner's involvement with no more than 224 grams of crack.

On May 2, 2000, the Court held the petitioner's Sentencing Hearing. On that occasion, the Court recounted certain trial testimony, but also heard testimony from the government's agent. At the conclusion of that testimony, the Court sustained defense counsel's objection to the drug quantity proposed in the Pre-Sentence Report, and agreed that the petitioner should not be held accountable for involvement with any more than 224 grams of crack.

The Court also sustained defense counsel's objection to a proposed enhancement for the petitioner's having completed drug deals within 1,000 feet of a school. In particular, the Court found that the school in question had been closed prior to the time that the conspiracy was alleged to have commenced.

On the other hand, however, the Court agreed that the petitioner was subject to a two-level enhancement under United States Sentencing Guidelines §2D1.1(b) by virtue of his co-conspirators' armed drug dealing activities. Thereafter, the Court determined

that the petitioner's total adjusted offense level was 36 and his criminal history category was VI, thereby exposing the petitioner to a range of 324 to 405 months imprisonment. At the conclusion of his Sentencing Hearing, the Court sentenced the petitioner to 324 months imprisonment.

The petitioner timely gave his Notice of Appeal to the Fourth Circuit Court of Appeals. On appeal, the petitioner challenged numerous matters, including the sufficiency of the evidence to sustain both his conviction and his firearm enhancement. The petitioner also challenged one of this Court's evidentiary rulings; and he challenged whether he was erroneously sentenced in excess of the applicable statutory maximum term, in violation of the then-newly announced rule from Apprendi v. New Jersey, 530 U.S. 466 (2000).[1] See United States v. McLendon, No. 00-4455, slip op. at 3-4 (4th Cir. April 29, 2002). Although the appellate Court rejected all of the peti-tioner's other contentions, it initially ruled that it could not determine whether he had been sentenced in error in violation of Apprendi. Therefore, the appellate Court vacated the petitioner's sentence and remanded his case for a determination of whether or not his prior drug conviction could be used to support his 324-month sentence. Id. at 6.

---

[1] Apprendi announced the new procedural rule that any factor other than a prior conviction which increases the statutory maximum term must be alleged in the indictment and proven beyond a reasonable doubt.

5

That is, the Court of Appeals found that since the petitioner's Indictment was silent as to the drug quantity, his sentence ordinarily could not have exceeded the 20-year term provided under 21 U.S.C. §841(b)(1)(C). Id. However, the Court further found that the petitioner's 324-month sentence still would have to be affirmed if he was subject to an enhanced term on the basis of his prior drug conviction. Id. To put it simply, the appellate Court found that if the record showed that the government gave the petitioner proper notice under §851(a) of his potential for an enhanced sentence, then §841(b)(1)(C) would have allowed the Court to impose a sentence of up to 30 years due to the petitioner's prior drug conviction. Nevertheless, because the Court noted that the record was "silent on th[at] issue," it remanded the petitioner's case for such determination and, if necessary, a modification of his sentence. Id.

However, before issuing its remand mandate, the Court of Appeals reheard this matter and reversed its initial determination. See United States v. McLendon, No. 00-4455, slip op. at 3 (4th Cir. July 30, 2002). In particular, the appellate Court found, that there was "overwhelming" and "essentially uncontroverted" evidence that the petitioner actually had dealt "in at least 50 grams of crack cocaine." Id. at 3. Therefore, using a plain error analysis in accordance with the U.S. Supreme Court's decision in United States v. Cotton, 535 U.S. 625 (2002), the Court of Appeals affirmed the petitioner's sentence upon its,

6

conclusion that the sentence did not exceed the maximum term of life imprisonment which could have been imposed had that specific quantity been alleged in the Indictment. Id. Thereafter, the petitioner's Petition for a Writ of Certiorari was denied by the U.S. Supreme Court.

Consequently, on February 2, 2004, the petitioner returned to this Court on his Motion to Vacate. By his Motion, the petitioner alleges that he was subjected to ineffective assistance of counsel in two specific instances. First, the petitioner alleges that counsel was ineffective for having failed to seek either a new trial or a mistrial on the basis of a "prejudicial variance and misjoinder of defendants and offenses, where [the] indictment charged a single conspiracy but the trial evidence proved separate, multiple conspiracies." Second, the petitioner alleges that counsel was ineffective for having failed to adequately cross-examine two witnesses concerning the drug amounts which they attributed to the petitioner.

On March 15, 2004, the government's combined Answer and Motion for Summary Judgment was filed. According to the government, the evidence produced at trial established a single conspiracy of which the petitioner was an active member. Furthermore, the government argues that the petitioner's challenge to his attorney's cross-examination is nothing more than baseless speculation. Thus, the government asserts that the petitioner's Motion to Vacate should be summarily dismissed.

7

On May 3, 2004, the petitioner filed a Declaration in Opposition to the government's Motion for Summary Judgment. In that document, the petitioner essentially reiterates his earlier contentions.

Notwithstanding the petitioner's contentions to the contrary, the Court has carefully reviewed this matter, and has determined that the petitioner has failed to demonstrate an entitlement to relief on either of his claims. Accordingly, the government's Motion for Summary Judgment must be <u>granted</u>.

## II. <u>ANALYSIS</u>

With respect to claims of ineffective assistance of counsel, the petitioner must show both that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984) <u>see also</u> <u>Fields v. Attorney Gen. of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir.), <u>cert. denied</u>, 474 U.S. 865 (1985); <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065 (1984); <u>and</u> <u>Marzullo v. Maryland</u>, 561 F.2d 540 (4th Cir. 1977), <u>cert. denied</u>, 435 U.S. 1011 (1978).

In considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. <u>Sexton v. French</u>, 163 F.3d

874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

### 1. The petitioner's claim that counsel was ineffective for having failed to seek a new trial or a mistrial is meritless.

Turning to his first claim, there the petitioner argues that counsel was ineffective for having failed to seek a new trial or a mistrial. According to the petitioner, such measures were warranted due to a "prejudicial variance and misjoinder of defendants and offenses . . . ." However, this claim must be flatly rejected.

First, this Court recalls that on direct appeal, the petitioner challenged the sufficiency of the evidence to sustain his conviction to involvement in such single conspiracy. However, the Fourth Circuit flatly rejected that challenge, stating that the record showed "there was sufficient evidence to sustain the convictions of each defendant." United States v. McLendon, No. 00-4455, slip op. at 6 (April 29, 2002). Indeed, on rehearing, as was previously noted, the Court of Appeals found that the government had presented "overwhelming and essentially uncontroverted evidence" of the petitioner's involvement in such conspiracy. McLendon, No. 00-4455, slip op. at 2 (July 30,

9

2002). Therefore, to the extent that this claim is the petitioner's thinly-veiled attempt to launch a new attack on the sufficiency of the evidence of his guilt, it clearly must fail.

Second, the Court notes that at the conclusion of his trial, the petitioner's defense counsel strenuously argued that the government's evidence had proven the existence of at least three separate conspiracies, not the single one alleged in the Indictment. Nevertheless, the jury obviously found that argument lacking inasmuch as it found the petitioner guilty of conspiring to sell cocaine as alleged in the Indictment. The jury's finding of a single conspiracy should not be disturbed unless there was evidence of multiple conspiracies which was likely to have confused the jury into imputing guilt to the petitioner as a member of one conspiracy because of the illegal activity of members of the other conspiracy. Here, there was no such evidence; therefore, there would not have been any basis upon which counsel could have sought the subject motions. See United States v. Roberts, 262 F.3d 286, 294 (4th Cir. 2001), cert. denied, 535 U.S. 991 (2002).

Further as to this multiple conspiracy theory, no such evidence was produced in this trial. Indeed, as the government noted in its Answer, witnesses Tillman, Carr, McRae and Wall all testified concerning the extensive nature of their cocaine dealing activities with each of the persons whom the petitioner has identified as having been leaders of other conspiracies. Two

of those witnesses, along with six others further established that their conspiratorial activities took place in the same geographic area, Anson County, North Carolina. In addition, all eight of those witnesses established that the petitioner was a "runner" for the subject conspiracy.

Under the law, a single conspiracy can be found where there are multiple transactions, so long as there is an overlap of key actors, methods and goals, indicating one overall agreement or one general business venture. United States v. Crockett, 813 F.2d 1310 (4th Cir. 1987). Indeed, a single conspiracy can be found where the evidence shows, as it did here, that "[t]he conspiracy had the same objective, it had the same goal, the same nature, the same geographic spread, the same results, and the same product." Id. at 1317. Furthermore, a single conspiracy can be found even where there were parallel and competitive activities among its members. United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993).

Equally critically, the fact that the witnesses' testimony did not connect every alleged member of the conspiracy to every single transaction is not critical to a finding of a single conspiracy. Indeed, the Fourth Circuit has stated that a conspiracy's participants "need not be involved in every phase of [the] conspiracy to be deemed a participant" in a single, ongoing conspiracy. United States v. Leavis, 853 F.2d 215, 218 (4th Cir. 1988). Therefore, the petitioner cannot prevail on this

argument.

As for the petitioner's assertions that he personally had little to no connection with many of the members of the conspiracy, and that he should not have been convicted for conspiring with them, such assertions simply are factually irrelevant. Rather, it is well settled that a defendant need not have knowledge of all of his co-conspirators, or of the details of the conspiracy in order to be convicted of being a member of such group. United States v. Strickland, 245 F.3d 368, 385 (4th Cir.), cert. denied, 534 U.S. 894 (2001). In fact, a defendant may be convicted on a conspiracy charge despite having played only a minor role in the overall conspiracy. Id.

To put it another way, "[o]nce it has been shown that a conspiracy exists, the evidence need only establish a slight connection between the defendant and the conspiracy to support conviction." United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir. 1992); accord United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc).

Moreover, and contrary to his other assertions, the mere fact that the petitioner was occasionally paid for his work with crack, or the fact that he may have consumed some of the crack which he was given to distribute, does not somehow convert his relationship with his co-conspirators into one of buyer and seller. Rather, such evidence simply establishes that the petitioner's participation in the conspiracy unfortunately allowed

12

him to more easily feed his drug habit.

Concerning the petitioner's argument that there was a misjoinder of defendants, such contention also is without merit. Indeed, the petitioner argues that he should not have stood trial with either Walt Willougby, Shannell Willougby, or Rodney Wall because he had no direct involvement with them. However, the law is equally clear that, "barring special circumstances, individuals indicted together should be tried together." United States v. Brugman, 655 F.3d 540, 542 (4th Cir. 1981).

This presumption that co-defendants should and will be tried together applies equally to defendants indicted on conspiracy charges. Zafiro v. United States, 506 U.S. 534, 537-38 (1993); United States v. Akinkoye 185 F.3d 192, 197 (4th Cir. 1999), cert. denied, 528 U.S. 1177 (2000). Moreover, no right to severance arises because the evidence against one or more defendants is stronger, or more inflammatory, than the evidence against other defendants. See, e.g., Strickland, 245 F.3d at 384.

In sum, the witnesses' testimony established a large-scale, loosely operated conspiracy involving many members, some of whom were not fully aware of the others. Such testimony also established that the petitioner was a member of that conspiracy. Therefore, this Court concludes that the petitioner was not prejudiced by defense counsel's decision not to seek a new trial or a mistrial. To be sure, on this record the Court finds that even if defense counsel had filed such motions on any of the

foregoing bases, they would not have been granted because there was sufficient evidence to establish the petitioner's membership in a single cocaine dealing conspiracy.

> 2. **The petitioner's challenge to defense counsel's handling of two of the witnesses also is without merit**.

By this allegation, the petitioner claims that counsel was ineffective for having failed to more effectively cross-examine two witnesses concerning drug amounts which they attributed to him. By the petitioner's calculations, had counsel mounted a vigorous cross-examination, he could have discredited the testimony and established the petitioner's involvement with less than the 224 grams of cocaine for which he was held accountable. However, even when using the petitioner's calculations, the Court has concluded that he did not suffer any prejudice by virtue of his attorney's performance.

The record reflects that Charles Robinson testified that on an occasion, he observed the petitioner retrieve a package containing about three-fourths of an ounce of crack for co-conspirator Donnell Lindsey. (Trial Transcript Volume II, pages 276-77). Subsequently, Theodore Carr testified that on "over 25" occasions, he gave the petitioner packages of cocaine valued at between $100 and $200 to sell for him. (Trial Transcript Volume III, pages. 388-389). Carr further stated that the subject packages typically were broken down into smaller $20-units. (p.

14

388).

In this Motion, the petitioner asserts that, a $20-sized unit contained two-tenths of a gram of crack. Therefore, even when using the petitioner's calculations and disregarding Robinson's testimony, the petitioner appears to be contending that he should have been held accountable for involvement with about 50 grams of crack (that is, for involvement with no more than 2 grams of crack on at least 25 separate occasions). However, the base offense level which corresponds to involvement with 50 grams of crack is 32, which is merely one level below the base offense level which the Court actually used to calculate his sentence. (See U.S.S.G. §2D1.1(4)).

Thus, after applying the 2-point enhancement under U.S.S.G. §2D1.1(b)(1) to base offense level 32, the petitioner's total adjusted level would have been 34. Furthermore, applying total offense level 34 to criminal history category VI, which level has not been challenged, the petitioner's range of imprisonment still would have been 262 to 327 months imprisonment. Ultimately, then, inasmuch as the petitioner was sentenced to 324 months imprisonment--a term which is well within the range which he seems to believe the Court should have used--he cannot possibly demonstrate any prejudice on the basis of his attorney's decision not to mount a vigorous cross-examination of these two witnesses. Therefore, this claim against counsel also must fail.

### III. CONCLUSION

The record of the proceedings underlying the petitioner's conviction fails to reveal merit in either of his two claims against counsel. Therefore, the government's Motion for Summary Judgment will be <u>granted</u>; and the petitioner's Motion to Vacate will be <u>denied</u> and <u>dismissed</u>.

### IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. That the government's Motion for Summary Judgment is **GRANTED;** and

2. That the petitioner's Motion to Vacate is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: February 13, 2006

Richard L. Voorhees
Chief United States District Judge